UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DBD TRANSPORT, INC., | § § § § § § § § § § § § | No. 5–16–CV–205–DAE |
| Plaintiff, | | |
| vs. | | |
| MCMAHON TRUCK CENTERS and MARIETTA TRUCK CENTER, | | |
| Defendants. | | |

ORDER GRANTING MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

On July 18, 2016, the Court heard oral argument on the Motion to Dismiss for Lack of Personal Jurisdiction filed by Columbus Truck & Equipment Center, LLC ("Columbus"), improperly sued as McMahon Truck Centers ("McMahon") and Marietta Truck Center ("Marietta") (collectively, "Defendants") (Dkt. # 5). Mark R. Stein, Esq., appeared on behalf of Defendants. Gershon D. Cohen, Esq., appeared on behalf of Plaintiff DBD Transport, Inc., ("DBD"). After carefully considering the memoranda in support of and in opposition to the Motion, and in light of the arguments advanced during the hearing, the Court **GRANTS** Columbus' Motion to Dismiss (Dkt. # 5).

1

BACKGROUND

On February 26, 2016, DBD filed a complaint against McMahon and Marietta alleging a violation of the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Comm. Code § 17.01 et seq.. According to Plaintiff, McMahon is located in North Carolina, and owns and operates Marietta, which is located in Ohio. (Id. ¶¶ 1, 6.) Columbus' Motion to Dismiss states that McMahon Truck Center and Marietta Truck Center are both located in Ohio and are operated by Columbus, a North Carolina LLC. (Dkt. # 5 ¶ 9.)[1]

Plaintiff's complaint alleges that on April 8, 2015, one of its drivers brought a company truck (the "truck") to Marietta, located in Marietta, Ohio, for repairs. ("Compl.," Dkt. # 1 ¶ 8.) Dennis Metts, an authorized agent for DBD,

---

[1] Columbus submitted the affidavit of Columbus' Controller and Treasurer, as well as the company listing from the North Carolina Secretary of State, in support of this assertion. (Dkt. # 5, Ex. A.) The Court may consider the company listing attached to the motion to dismiss without converting the motion into one for summary judgment. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (stating that a court may consider materials outside the pleadings on a motion to dismiss where those materials are both central to the plaintiff's claims and referenced in the complaint).

The address for McMahon Truck Centers identified in Plaintiffs' complaint is the same as the corporate address of Columbus, the manager of which is Michael P. McMahon. (Compare Compl. ¶ 1A with Dkt. # 5, Ex. A at 3.) This reference sufficiently incorporates Columbus' company listing in the complaint; further, this listing is central to the Court's determination regarding jurisdiction, as Columbus, rather than McMahon, is the North Carolina entity which operates Marietta.

Finally, at the hearing, Plaintiff did not object to the appearance of Columbus as a Defendant.

authorized Marietta to repair the truck's oil cooler, brakes, clutch, tail light, tire, and air conditioner compressor; the repairs cost $5,743.76 and were completed on April 30, 2015. (Id. ¶¶ 5, 8–9.) Plaintiff alleges that Marietta did not "flush out" the system, replace the oil filter, or add new oil after replacing the oil cooler, though Plaintiff assumed Marietta had done so. (Id. ¶ 7.)

On May 1, 2015, the truck, which had been driven 90 miles from Marietta, allegedly "threw a rod," presumably as a result of the purportedly faulty oil cooler repair. (Compl. ¶ 10.) Metts states that he contacted the service director at Marietta, who towed the truck back to Marietta, Ohio. (Id. ¶¶ 8, 10.) On July 29, 2015, Marietta sent Metts a towing bill for $1,358.04; Metts paid the bill and towed the truck to Porter, Texas, on August 8, 2015. (Id. ¶ 12.) Defendants were not involved in towing the truck to Texas. (Id.) Metts eventually drained the oil out of the truck's filter and sent it to Black Stone Labs in Fort Wayne, Indiana for testing; according to DBD, these tests uncovered various problems with the oil.[2] (Id. ¶ 13.)

Plaintiff brought suit against McMahon and Marietta, seeking damages under the DTPA for engaging in unconscionable action. (Compl. ¶¶ 14, 16–17.) The complaint also appears to allege a cause of action for negligence. (Id.

[2] Specifically, the report found that the viscosity of the oil was too high, the additives in the oil were too low, and the oil contained a significant amount of antifreeze. (Compl. ¶ 13.)

¶¶ 15, 17(B).)  On March 22, 2016, Columbus filed the instant Motion to Dismiss for Lack of Personal Jurisdiction.  (Dkt. # 5.)  After filing and receiving multiple motions for an extension of time, Plaintiff filed a response on May 4, 2016.  (Dkt. # 12.)  On May 10, Columbus filed a Reply.  (Dkt. # 13.)

## LEGAL STANDARD

Where a nonresident defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a court must determine whether it has personal jurisdiction over the defendant by "first determin[ing] whether the long arm statute of the forum state permits exercise of jurisdiction[,] . . . then determin[ing] whether such exercise comports with due process."  Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993).  "The Texas long-arm statute extends to the limits of the Constitution," and a Texas court's "inquiry is therefore limited to the reach of the Fourteenth Amendment's Due Process Clause."  Stroman Realty, Inc. v. Antt, 528 F.3d 382, 385 (5th Cir. 2008).  "The Fourteenth Amendment allows a court to assert personal jurisdiction over defendants who have meaningful 'contacts, ties, or relations' with the forum state.  Such contacts can give rise to general or specific jurisdiction."  Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).  However, the Fourteenth Amendment also "limit[s] the power of a State to assert in personam jurisdiction over a nonresident defendant."  Helicopteros Nactionales de Colombia,

S.A. v. Hall, 466 U.S. 408, 413–414 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1878)).

Where a defendant has "'continuous and systematic general business contacts' with the forum state," the forum may exercise general personal jurisdiction over the defendant. Antt, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415 n. 9). Where a Defendant's contacts "are less pervasive, courts may exercise 'specific jurisdiction' in 'a suit arising out of or related to the defendant's contact with the forum.'" Antt, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415 n. 9).

The plaintiff bears the burden of proof to demonstrate personal jurisdiction. Nuovo Pignone, PsA v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002); Elly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). Courts in the Fifth Circuit evaluate whether the exercise of either general or specific personal jurisdiction is consistent with the Due Process Clause by applying a three-part test, considering:

> (1) [W]hether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Nuovo Pignone, 310 F.3d at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). Where a defendant's contacts with the forum state are

insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment, the court must dismiss the case for lack of personal jurisdiction.  Id.

## ANALYSIS

I. <u>Whether Columbus is subject to general personal jurisdiction</u>

A plaintiff must make a showing that the defendant has "'continuous and systematic general business contacts' with the forum state" in order for the Court to exercise general personal jurisdiction over a defendant.  <u>Antt</u>, 528 F.3d at 385 (quoting <u>Helicopteros</u>, 466 U.S. at 415, n. 9.).  Columbus states that it does not conduct business in Texas, own property in Texas, or maintain employees, servants, or agents in Texas.  (Dkt. # 5 ¶ 15.)  John M. Kunkel, the Controller and Treasurer of Columbus, submitted an affidavit stating the same.  ("Kunkel Aff., Dkt. # 5, Ex. A ¶¶ 8–13.)  DBD does not allege a single fact relating to the Court's general personal jurisdiction over Columbus, McMahon, or Marietta, and accordingly fails to make a prima facie case for the existence of general jurisdiction.  (<u>See</u> Compl.; Dkt. # 12.)

Accordingly, there are insufficient contacts between Texas and Columbus, McMahon, or Marietta to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment; the Court cannot constitutionally exercise general jurisdiction over any Defendant.

II. <u>Whether Columbus is subject to specific personal jurisdiction</u>

Columbus argues that this Court cannot exercise specific jurisdiction over it, McMahon, or Marietta, because they did not purposefully avail themselves of the benefits and protections of Texas law, did not conduct any activities in Texas, or purposefully direct any activity towards Texas. (Dkt. # 5 ¶ 11.) Further, Columbus states that it does not advertise in or otherwise solicit business from Texas, nor does McMahon or Marietta. (<u>Id.</u> ¶ 13.)

DBD argues, on the other hand, that Defendants committed an intentional tort,[3] permitting this Court to exercise specific jurisdiction over them, presumably pursuant to <u>Calder v. Jones</u>. (Dkt. # 12 at 7); 104 S. Ct. 1482 (1984). DBD also argues that the Court has specific jurisdiction because Marietta should have known it was repairing a Texas truck, belonging to a Texas business entity. (Dkt. # 12 at 7.)

A. <u>Whether Columbus has established minimum contacts with Texas</u>

A party has sufficient minimum contacts justifying the exercise of specific personal jurisdiction if it takes "some act whereby [it] 'purposely avails

---

[3] Importantly, DBD's complaint does not allege that Defendants were intentionally negligent. (<u>See</u> Compl.; Dkt. # 12.) While DBD alleges that Defendants violated the DTPA, "knowing violations of the DTPA are not intentional torts." <u>Nat'l Union Fire Ins. Co. of Pitt, Pa. v. Puget Plastics Corp.</u>, 532 F.3d 398, 402 (5th Cir. 2008). Accordingly, even if the commission of a single intentional tort is sufficient to permit the exercise of specific personal jurisdiction – an issue the Court need not address at this time – it is insufficient to justify such an exercise here, where DBD does not state any claims involving intentional torts. (<u>See</u> Compl.; Dkt. # 12.)

itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" Nuovo Pignone, 310 F.3d at 379 (quoting Burger King, 471 U.S. at 474). A party need only engage in a "single substantial act" to justify "the exercise of specific jurisdiction in an action arising from or related to such acts." Ham, 4 F.3d at 415–16. However, this act must be "[p]urposeful forum-directed activity." Id. at 415.

The Supreme Court has recently made clear that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014). Accordingly, "the plaintiff cannot be the only link between the defendant and the forum." Id. Further, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. at 1125 (emphasis added).[4]

Here, DBD has not alleged that Defendants "reach[ed] out beyond" North Carolina or Ohio to "create continuing relationships and obligations with citizens of" Texas, nor have they alleged the existence of a contractual relationship

---

[4] Plaintiff actually acknowledges this rule, and inexplicably does not attempt to distinguish it: "In 2013, the Supreme Court addressed the Calder Effects test and emphasized that injury to the Plaintiff, without more, is not a sufficient contact to the forum state. *Ralden* [sic], 134 S. Ct. at 1125." (Dkt. # 12 at 7.)

between them.  Burger King, 471 U.S. at 473 (quoting Travelers Health Ass'n v. VA, 339 U.S. 643, 647 (1950)).  DBD does not allege that Defendants "continuously and deliberately exploited" the Texas market, nor does it allege any fact which might indicate Defendants "reasonably anticipate being haled into court there."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 (1984).  In fact, aside from the fact that the truck bore Texas license plates at the time of repair, DBD does not allege that Marietta was even aware it was doing business with an entity from Texas.  (Dkt. # 12 at 7.)  DBD has not alleged that Defendants purposefully availed themselves of the benefits of Texas laws, nor does it allege that Defendants have made any meaningful contact with Texas at all, aside from the fact that they may have caused an injury to a Texas plaintiff, which Walden clearly states is an insufficient basis for the exercise of jurisdiction.  See Walden, 134 S. Ct. at 1125; Nuovo Pignone, 310 F.3d at 379.  Accordingly, Plaintiffs have failed to allege sufficient minimum contacts justifying the exercise of specific jurisdiction over Defendants.

     B.  Whether the cause of action arises out of forum-related contacts

     As explained above, this cause of action does not arise out of Defendants' forum-related contacts.  See e.g., Ham, 4 F.3d at 415.  DBD alleges that one of its drivers brought the truck to Marietta – in Ohio – for repairs, and that Metts authorized the repairs.  (Compl. ¶ 8–9.)  DBD does not allege that Marietta

repaired the truck due to any pre-existing relationship between the parties, nor does it allege that it brought the truck to Marietta because of effective advertising campaigns in Texas.  Further, Defendant states that Columbus does not maintain a place of business in Texas, has no employees, servants, or agents in Texas, and does not own, lease, rent, or control any real or personal property in Texas, does not advertise, solicit, or conduct any business in the state of Texas.  (Kunkel Aff. ¶¶ 8–13.)  Accordingly, this action does not arise out of Defendants' contacts with Texas, and exercise of jurisdiction would not satisfy the requirements of the Due Process of the Fourteenth Amendment.

      C.  Whether exercise of personal jurisdiction is fair and reasonable

Where a plaintiff demonstrates sufficient "minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable."  Nuovo Pignone, 310 F.3d at 382; Felch v. Transportes Lar-Mex SA de CV, 92 F.3d 320, 324 (5th Cir. 1996).  Here, despite DBD's complete failure to demonstrate minimum contacts between Defendants and the forum state, Columbus has provided evidence that the assertion of jurisdiction is unreasonable.  (See Dkt. # 5 ¶¶ 19–21.)  Columbus states that the incident forming the basis of the complaint occurred in Ohio, the witnesses to the work performed are in Ohio, and all business documents are located in Ohio and North Carolina.  (Id.)  These factors weigh

against asserting jurisdiction over Defendants.

## CONCLUSION

DBD failed to meet its burden to demonstrate that Defendants have sufficient minimum contacts with Texas to reasonably anticipate being haled to Court in the state. For the reasons stated above, this Court does not have personal jurisdiction over Columbus, McMahon, or Marietta. The Motion to Dismiss for lack of personal jurisdiction is **GRANTED** (Dkt. # 5). This case is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, July 18, 2016.

_____
David Alan Ezra
Senior United States Distict Judge